## IN THE UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF MARYLAND

| | |
|---|---|
| **BULLESEYEBORE, INC.,** | ) |
| | ) |
| Plaintiff, | )    Civil Action No. |
| | ) |
| v. | ) |
| | ) |
| **LANDBASE TRADING CO. LTD, and** | )    **VERIFIED** |
| | )    **COMPLAINT FOR  COPYRIGHT** |
| **MANNER TRADING CO . LTD, and** | )    **PATENT AND TRADEMARK** |
| | )    **INFRINGEMENT,  FALSE** |
| **Maoyun Zhou,  and** | )    **ADVERTSING AND** |
| | )    **CONSPIRACY** |
| **Yanbo Zhao, and** | ) |
| | ) |
| **DOES 1-9.** | ) |
| | ) |
| Defendants. | |

Bullseyebore, Inc ("Plaintiff"), by and through its undersigned counsel, hereby files this

Complaint against Defendants as listed above and on Schedule A ( "Defendants")  for

infringement under the Copyright Act, False designation of origin under the Lanham Act,

common law trademark infringement, infringement under the Patent Statue, False Advertising

under the Lanham Act, and civil conspiracy .(together, "Defendants"). In support hereof, Plaintiff

states as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, et seq., the Copyright Act, 17 U.S.C.

1

§ 101, et seq, the Lanham Act, 15 U.S.C. § 1051, et seq., the Patent Act, 35 USC 271 et seq; and 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331 and 1338(a).

2.  This Court has jurisdiction over the common laws trademark claims and conspiracy in this action that arise under the laws of the State of Maryland pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Maryland, through their operation of or assistance in the operation of the fully interactive, commercial internet stores operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants directly reaches out to do business with Maryland residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products featuring Plaintiff's patented products, and/or sell products using infringing versions of Plaintiff's federally registered copyrighted works, and/or sell products using counterfeit versions of Plaintiff's trademark directly to Maryland consumers. It is submitted that each Defendant is committing tortious acts in Maryland, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Maryland.

4.  Alternatively, the Court also has long-arm jurisdictional over the Defendants as set forth in Federal Rules of Civil Procedure, Rule 4(k)(2) as (1) the claim at issue arises from federal law; and  (2) the defendants are not subject to any state's courts of general jurisdiction; and (3) invoking jurisdiction upholds due process.

## II. INTRODUCTION

5. Plaintiff is filing  this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by (1) using Plaintiff's copyrighted images (U.S. Reg. Nos. VA 2-378-708 (the "BULLSEYEBORE Works") in connection with the sale and advertising of the infringing products; (2) selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's common law trademark, "the BULLSEYEBORE and design (the "Bullseyebore  Trademark"),  (3) and/or making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that use infringe Plaintiff's patents relating to drill alignment devices  (US Patent No. US7992311 B2 (The '311 Patent)  and US No. US10150167B2 (The '167 Patent)  (The '311 and 167 Patents are collection referred to as the "BULLSEYEBORE Patents"); false adverting and civil conspiracy.

6. The Defendants are involved in the creation of dozens of internet web stores and Instagram advertisements (the "Web Stores" and False Advertisements) and designed them to appear to be selling genuine copies of Plaintiff's BULLSEYEBORE branded products when in fact the Stores are selling counterfeit versions to unknowing customers, and/or making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use infringing products to unknowing consumers ("Accused Products").

7. Since Defendants lack any license to the other legal access to the Accused Products, on information and belief, Defendants are accepting orders for products without the intention of fulfilling the orders and are defrauding those that seek the Accused Products.

8. The Defendants Internet Stores all share unique identifiers, such as similar and identical design elements on the webpages, which were copied from Plaintiffs website and/or other social media publications and which include copyrighted images the infringing products offered for sale and videos of Plaintiffs products. The Web Stores also sell the Accused Products for the same price.

9. All of Defendant Web Stores use one of two domain registrars, either Namesilo, LLC or Alibaba Cloud Computing, Ltd.

10.  These similarities suggest that all of the Defendant's Web Stores share common marketing and manufacturing sources, thus establishing the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences.  Namely, Defendants use Plaintiffs registered copyrights in the BULLSEYEBORE Works as well as its unregistered copyrights in videos and other graphic elements  as well as the BULLSEYEBORE Trademark.

11.  Defendants have gone to some lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, by opening multiple Web Stores under common ownership, and/or, on information and belief, helping associates open Web Stores that do not provide any ownership information.

12.  Defendants' have executed several hundred paid ads through Meta platforms such as Facebook and Instagram, using Plaintiff's copyrighted images, its trademarks and they have used the hashtag #thecore which is a brand that Plaintiff has adopted for its product in paid ads.  This activity has driven sales away from Plaintiff and has served to increase Plaintiff's advertising costs by creating competitors.

13. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's copyrighted works, and trademarks as well as to protect unknowing consumers from purchasing infringing or counterfeit products over the Internet.

14. Plaintiff has been and continues to be irreparably damaged both through consumer confusion, and tarnishment of its trademark, and Defendants' false advertising, and as a result of Defendants' actions, Plaintiff seek injunctive and monetary relief, from loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented product, and damages from copyright and trademark infringement.

### III. THE PARTIES

***Plaintiff Bullseyebore, Inc and its Intellectual Property.***

15. Plaintiff Bullseyebore, Inc. is a corporation organized under the laws of Wyoming and owns all right title and interest to the Bullseyebore Products, which provide a unique solution to assist with maintaining  the position of a hand-held drill when engaging a bit on a work surface (the "BULLSEYEBORE Products"). Plaintiff sells the products through-ecommerce marketplaces throughout the United States and makes direct sales for certain specialty uses. Since the recent launch and associated social media campaign the BULLSEYEBORE Products have become enormously popular, driven by Plaintiff's innovative concept and design.

16. Plaintiff launched its most recent BULLSEYEBORE Product in January of 2023 and first sold the products to aircraft manufacturer Boeing Inc and Viking Spa, Inc.  It used the Bullseyebore trademark depicted below by applying the mark to its products.

17.  Plaintiff is currently making the products available to consumers through its website, http://www.bullseyebore.com/ and working on a Kickstarter campaign that is schedule to start in

late January 2024. In anticipation of the launch to consumers, it has advertised and marketed its Products on various online platforms such as Facebook, Instagram and TikTok.

18.  Plaintiff's website and social media feature original content, including videos and photographs of the operation and applications for its Products. Its YouTube video that promoted the device had more than 6,000 views since December 11, 2023 (https://www.youtube.com/watch?v=2SugRirRcrQ) and the BULLSEYEBORE Instagram page has more than 3,000 followers.

19.  On December 29th, an affiliate of Bullseyebore Inc. featured the Bullseyebore Product in an Instagram and TikTok post that attracted over 70 million views and 500,000 likes on Instagram.  https://www.instagram.com/reel/C1ccY_hLZSU/ .

20. Plaintiff also adopted and used the BULLSEYEBORE and the BULLSEYESBORE and design Trademarks (the "BULLLSEYE BORE Trademarks") depicted below since  at least as early as October 23, 2024



:

21.  The BULLSEYEBORE Trademarks are distinctive and they serve to identify the merchandise as goods originating from the Plaintiff.

22. Plaintiff uses the BULLSEYEBORE Trademarks to identify its goods on its website www.bullseyebore.com and YouTube videos in connection with the marketing and sale of its products such as shown below:






23. The BULLSEYEBORE Trademarks are distinctive when applied to Plaintiff's goods, signaling to purchasers and consumers that the products are from Plaintiff and are made and manufactured to Plaintiff's original specifications and standards.

24. Since its initial launch of the original BULLSEYEBORE branded products in 2023 Plaintiff's trademark has been the subject of and continuous marketing and promotion by Plaintiff throughout the United States. Plaintiff has and continues to widely promote and market its trademark to customers and has a major marketing campaign directed to the general public at the end of January 2023. Genuine and authentic BULLSEYEBORE branded products are offered and sold by Plaintiff directly, and using its own website.

25. Plaintiff has expended substantial time, money, and other resources to develop, advertise, and otherwise promote the BULLSEYEBORE Products and Trademark.  As a result, customers recognize that products bearing the distinctive BULLSEYEBORE Trademark originate exclusively from the Plaintiff.

26.   Plaintiff is also the owner of United States Copyright Registration No. VA 2-378-708  in the BULLSEYEBORE Works which is directed to a group of photographs titled "Bullseyebore Photographs for website October 2023."  Exhibit A  The copyrighted images are shown in Exhibit B attached hereto.

27.   Since their first publication, the BULLSEYEBORE Works have been used to sell Bullseyebore Products. Plaintiff's products and its accompanying copyrighted works have been the subject of substantial and continuous marketing and promotion by Plaintiff since October 23, 2023 throughout the United States and, due to its strong internet presence, throughout the entire world.

28.  Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, distribute, and display the BULLSEYEBORE Works to the public.

29.  Plaintiff is also the exclusive licensee of all rights, title, and interest in and to U.S. Patent No. US7992311 B2 (The '311 Patent)  and U.S. Patent No. US10150167B2 (the '167 Patent), including the right to sue for past infringement.  Copies of the patents are attached as Exhibits C and D. The patents are generally directed to a device adapted to be attached to a drill that projects laser beams on an image to assist with alignment of a hand-held drill.

30.  The '311 and '167 Patent cover the BULLESEYEBORE Products and Plaintiff has not licensed any manufactures or distributors the right to make Bullseyebore Products or use Bullseye Trademarks for sale to third parties.

### The Defendants

31. Defendants are individuals and entities who, upon information and belief, are organized and reside in foreign jurisdictions.

32.  On information and belief, Defendant Manner Trading Co., Ltd. Is a limited corporation organized under the laws of the United Kingdom and has a place of business at. 69 Aberdeen Ave., Cambridge, United Kingdom  Defendant is the listed owner of  the following Web Stores that offer for sale the accused "AlignDrill Pro" products.

https://www.olarglscal.com/products/vertical-drill

https://purist-fish.com/products/vertical-drill

https://www.fundamentak.com/products/vertical-drill

https://www.certainow.com/products/vertical-drill

33.  On information and belief, Defendant Landbase Trading Co., Ltd. ("Landbase Trading") is a limited corporation organized in the United Kingdom and has an address 146a

Whitchurch Road, Cardiff, UK CF14.  Defendant Landbase Trading is identified as the owner of the following Web Stores that offer for sale the AlignDrill Pro Products:

> https://www.wow-gogerous.com/products/vertical-drill
>
> https://www.recreationh.com/products/vertical-drill
>
> https://www.vofatiponal.com/products/vertical-drill
>
> https://www.slightliy.com/products/vertical-drill
>
> https://www.densityg.com/products/vertical-drill-2
>
> https://www.consulbefor.com/products/vertical-drill

34.  On information and belief Defendant Xujing Song is a Director of both Landbase Trading and Manner Trading and has business addresses at 146(a) Whitchurch Road, Cardiff, UK CF14 3NA.

35.  On information and belief Defendant Maoyun Zhou is a Director of both Defendants Landbase Trading and Defendant Manner Trading and has business addresses at 146(a) Whitchurch Road, Cardiff, UK CF14 3NA.

36.  Each of the Defendants operates similar websites stores that offer the "AlignDrill Pro" products that use identical images, copyrighted by Plaintiff to market the accused products. Defendants also used copyrighted videos and graphics that were created by Plaintiff and its adverting suggests that the image depicts the AlignDrill pro products.  As such. Defendants Web Stores offer for sale counterfeit Bullseyebore Products.

37. Defendants also use the BULLSEYEBORE Trademark in its advertisement and Web Stores  In this regard, when Defendants copied and subsequently displayed Plaintiff's videos,

they displayed the  BULLSEYEBORE Trademarks. As such. Defendants Web Stores offer for sale counterfeit Bullseyebore Products

38. On information and belief, these advertisements are simply designed to deceive and steal from Meta users.  Not only does the use of Plaintfdfs deceive the consumers, on information and belief, Defendants do not have products to fulfill orders.

39.  Defendant fraudulent ads published on Meta platforms such as Facebook and Instagram are materially impairing Bullseyebore Inc's ability to market its product in preparation for a Kickstarter Campaign launch January 30th  2024.

40.  Defendants conduct business throughout the United States, including within the state of Maryland and in this Judicial District, through the operation of fully interactive commercial websites. Each Defendant targets the United States, including Maryland, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Maryland and in this Judicial District.

41. On information and belief, Defendants are an interrelated group of infringers and counterfeiters who create numerous Internet Web Stores that all use Plaintiff's copyrights and trademarks. These stores to appear to be selling genuine BULLSEYEBORE Products. The Defendants Internet Web Stores share unique identifiers, such as common design elements, including identical product images owned by Plaintiff, similar page layouts, similar or identical product descriptions, identical BULLESEYEBORE videos owned by Plaintiff and which incorporate the BULLESEYEBORE Trademarks,  the use of the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, and offer identically or similarly priced counterfeit products.

42.   As such, the Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it difficult or impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. THE DEFENDANTS' UNLAWFUL CONDUCT

43. The success of Plaintiff's initial advertising campaign since October 2023 has prompted Defendants to initiate a significant infringement and counterfeiting operation. Consequently, Plaintiff has identified numerous webstore listings as set forth in Schedule A**,** that on information and belief, have resulted in a sales of unauthorized products into the United States.

44. Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. Counterfeiters take advantage of the fact that platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to maintain their identities secret or use false or inaccurate names and addresses when registering with these Internet platforms.

45.   The Defendants intend to garner sales from US residents, including Maryland residents, by setting up and operating e-commerce internet stores that target United States consumers, offer shipping to the United States, including into Maryland, accept payment in U.S.

dollars, and, on information and belief, have or intent to sell infringing  and counterfeit products to residents of Maryland.

46.  Upon information and belief, at all times relevant hereto, since Defendants copied Plaintiffs photographs and videos from Plaintiffs website (www.bullseyebore.com) the Defendants in this action have had full knowledge of Plaintiff's ownership of the BULLSEYEBORE copyrights and trademarks including its exclusive right to use such intellectual property and their associated goodwill. Defendants' Web  Stores use Plaintiff's BULLSEYEBORE Trademarks and copyrighted BULLSEYEBORE Works  to advertise their infringing product sowing confusion among potential purchasers.

47.  The infringing products depicted for sale in the Defendant Web Stores bear similarities and indicia of being related to one another, suggesting that, if any products are ever delivered, the infringing products are manufactured by and come from a common source and further suggest that Defendants are interrelated.

48. Upon information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without authorization or license from Plaintiff, have jointly and severally, knowingly, and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that constitutes an infringement of the BULLSEYEBORE patents, trademarks, and copyrights. Each e-commerce offers shipping to the United States, including Maryland, and, on information and belief, each Defendant has sold or offered for sale Infringing Products in the United States and in Maryland over the Internet.

49. On information and belief, one of more of the Defendants' infringement of the BULLSEYEBORE Works and Trademark in making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

50. Defendants' infringement of the BULLSEYEBORE Patents in connection with making, using, offering for sale, selling, and/or importing into the United States for the subsequent sale or use of the Infringing Products, including the making, using, offering or sale, selling, and/or importing into the United States for the subsequent sale or use of infringing products into Maryland, is irreparably harming Plaintiff.

51. Defendants' use of the BULLSEYEBORE Trademark and Copyrighted Works on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the infringing products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

52. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon the BULLSEYEBORE Works, Trademarks and Patents unless preliminarily and permanently enjoined.

## COUNT I
### *COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))*

53. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52.

54. Plaintiff's Works have significant value and have been produced and created at considerable expense. Plaintiff is the owner of each original work, and all works at issue have been registered with the U.S. Copyright Office as Registration No. VA 2-378-708. Exhibit A.

55. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights

infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted Plaintiff's works, including derivative works.

56. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's works, Defendants wrongfully created copies of the copyrighted Plaintiff's works without Plaintiff's consent and engaged in acts of widespread infringement through publishing and distributing the Plaintiff's works via online websites and used the works in connection with the marketing of their counterfeit products. The photographs used by Defendants are identical to the original Plaintiff's works.

57. Defendants, without the permission or consent of Plaintiff, have published online infringing derivative works of Plaintiff's works and therefore have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101, et seq.).

58. Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted Plaintiff's works. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's works.

59. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts, and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

60. As a result of Defendants' infringement of Plaintiff's exclusive rights under its copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504, and to recovery of its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

61. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502-503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further

infringing Plaintiff's copyrights and ordering that Defendants destroy all unauthorized copies. Defendants' copies, digital files, and other embodiments of Plaintiff's copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. § 503.

## COUNT II

### *FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT*

62. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 61.

63. This case also concerns a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the BULLSEYEBORE Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The BULLSEYEBORE Trademark is a distinctive mark and consumers recognize genuine BULLSEYEBORE branded products are characterized by quality and value.

64. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with Plaintiff's BULLSEYEBORE Trademark without Plaintiff's permission.

65. Plaintiff is the exclusive owner of the BULLSEYEBORE trademark and on information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's trademark and are willfully infringing and intentionally offering counterfeit items using Plaintiff's trademark. Defendants' willful, intentional, and unauthorized use of Plaintiff's trademark is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit

goods among the general consuming public. Such actions by Defendants have caused actual confusion.

66. Defendants' activities constitute a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125 wherein Plaintiffs have used terms, names, symbols, and devices that are likely to cause confusion, mistake and/or deception as the affiliation, connection and or association of Defendants with Plaintiff as to the origin, sponsorship, approval of the accused products.

67. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its trademark.

68. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's BULLSEYEBORE branded products.

## COUNT III

### *COMMON LAW TRADEMARK INFRINGEMNT*

69. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 68.

70.  By its adoption and use of the BULLSEYEBORE name and BULLSEYEBORE TRADEMARK  design in connection with the advertising and sale of its competing drilling alignment products, Plaintiff is the owner of common law rights in the trademarks:

(a)  BULLSESYEBORE,

(b)  red and black BULLSEYEBORE and Design trademark as depicted in ¶ 20 above, and

(c )  the black BULLEYEBORE and Design trademark as depicted in ¶ 20 above in connection with the sale of such drilling alignment products.

71.  Defendants have infringed Plaintiffs BULLSEYEBORE Trademarks by using the same distinctive marks in connection with the marketing and of sale of competing drilling alignment products.

72.  Such infringement has resulted in actual confusion and Plaintiff has been damaged by the Defendants infringement and such damage includes lost sales and damages to its reputation in the marketplace and its goodwill.

73.  Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its trademark.

74. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and or sale of counterfeit or infringing versions of Plaintiff's BULLSEYEBORE branded products.

## COUNT IV

### *FALSE ADVERTISING UNDER  15 U.S.C. § 1125(a)(1)(B)*

75. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 74.

76. Defendants unauthorized use of Plaintiff's copyrighted images, videos of Plaintiff's Bullseyebore  Products and Plaintiff's trademarks in connection with its advertising and sale of Defendant's AlignDrill Pro products falsely suggests to consumers that, in response to a purchase order made through the accused Web Stores, they will be supplied with Plaintiff's Bullseyebore Products or the parties are somehow related or affiliated.

77. The aforesaid acts constitutes alleges false advertising under the Lanham Act, 15 U.S.C. 1125(a)(1)(B) which provides:

(1)      Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

78.  Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its products and trademarks.

79. Plaintiff has been injured or has likely been injured by Defendants false adverting.

## COUNT V.

### Patent Infringement Under 35 U.S.C. 271

80. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 80.

81.  Plaintiff is the exclusive licensee of U.S. Patents No. 7,992,311 (the '311 Patent) for Rotary boring tool alignment and depth indication system and U.S. Patent No. 10,150,167 (the '167 Patent") for Rotary boring alignment and depth indication system that are generally directed to drilling alignment devices.

82. The '311 and 167 Patents claim patent-eligible subject matter and are valid and enforceable.

83.     Defendants are not licensed under to the '311 or 167 Patents, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '311 or 167 Patents.

84. The Accused Products offered for sale by Defendants infringe at least one claim of '311 Patent which recite, *inter alia*, an alignment and depth indication system for tools having rotating means, where the system includes a first and second light source, means to couple the light source to the rotating, wherein a first beam is directed parallel with a longitudinal axis of the cutting bit  and a second beam is on an angle to the work surface.

85.  The products offered for sale by Defendants infringe at least one claim of '167 Patent which recite, *inter alia*, a retention member for attachment to the rotating element of a boring instrument having a penetrating element, a plurality of mirrors, which include a beam splitting mirror and further comprising an alignment mirror which orients a beam of light parallel with a penetrating element, and an depth indication mirror that may be oriented at an angle 90 degrees or less.

86.  Upon information and belief, Defendants manufacture, sell, offer to sell, facilitate to sell, or facilitate to offer to sell the Accused Products in United States or to consumers in the United States, or import the Accused Products into the United States.

87. Defendants have continued inducing consumers to use the patented technologies without proper license or authorization from the Plaintiff by continuing selling, facilitating to sell, offering to sell, and/or facilitating to offer to sell the Accused Products to consumers.

88.     Defendants have continued inducement of consumers to use the technologies disclosed and claimed in the Patents in Suit without proper license or authorization from Plaintiff constitutes infringement of the '311 Patent and '167 Patents under 35 U.S.C. § 271(b).

89. Plaintiff has been damaged by the infringement and such damages are no less than a reasonable royalty.

## COUNT V.
## *CIVIL CONSPIRACY*

90. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 89.

91. Plaintiff is informed and believes and thereon alleges that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, offer for sale, or sale of products that infringed the BULLSEYEBORE Trademarks, infringed the BULLSEYEBORE Works, and Infringed the BULLSEYEBORE Patents.

92.  Defendants agreement to accomplish unlawful actions, including copyright infringement, trademark infringement and patent infringement and false advertising that resulted in harm and damages to the Plaintiff.

93.  Unless each Defendant is restrained and enjoined, Plaintiff will continue to sustain severe, immediate, and irreparable harm, damage, and injury for which Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, employees, attorneys, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminary, and permanently enjoined and restrained from:

i. Using Plaintiff's copyrighted images in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademark

ii. Using Plaintiff's Bullseyebore Trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademark;

iii. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademark and associated with or derived from Plaintiff's trademark;

iv. Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe Plaintiff's trademark;

v. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's copyrighted photographs and videos in connection with the offer or sale of counterfeit products;

vi. Further infringing Plaintiff's trademark and damaging Plaintiff's goodwill;

vii. Otherwise competing unfairly with Plaintiff in any manner;

viii. Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademark, or any reproductions, counterfeit copies, or colorable imitations thereof;

ix. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

x. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's Copyrights, Plaintiffs trademarks or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trademark; and,

B. That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i. Displaying images protected by the Plaintiff's trademark in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademark; and

      ii. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's trademark or any reproductions, counterfeit copies, or colorable imitation thereof; and,

      C. That Defendants, within seven 7 days after service of an order from the court with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

      D. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such Facebook and Instagram and payment processors such as: PayPal, Stripe, Payoneer, LianLian, and Google Pay; social media platforms such as: Meta, Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, Twitter; Internet search engines such as: Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all Accused Web Stores through which Defendants engage in the sale of counterfeit products using the Plaintiff's copyright and trademarks; shall:

      i. Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit Plaintiff's BULLSEYEBORE branded product using Plaintiff's trademark, including any accounts associated with the Defendants listed on Schedule A;

ii. Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeiting and infringing counterfeit product using Plaintiff's trademark; and,

iii. Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E. That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F. For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's trademark pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

` H. That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

i. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff

and that include any reproduction, copy or colorable imitation of the
BULLSEYEBORE Patents.

ii.    aiding, abetting, contributing to, or otherwise assisting anyone in
infringing upon the BULLSEYEBORE Patents; and

iii.   effecting assignments or transfers, forming new entities or associations or
utilizing any other device for the purpose of circumventing or otherwise
avoiding the prohibitions set forth in Subparagraphs (a) and (b)  such as:
Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and Twitter;
Internet search engines such as Google, Bing, and Yahoo; webhosts for the
Defendants Domain Names; and domain name registrars shall disable and
cease displaying any advertisements used by or associated with
Defendants in connection with the sale of goods that infringe the
BULLSEYEBORE Patents;

K. That Plaintiff be awarded such damages as it shall prove at trial against Defendants
that are adequate to compensate Plaintiff for Defendants' infringement of Plaintiffs Patent,
but in no event less than a reasonable royalty for the use made of the invention by the
Defendants,
together with interest and costs, pursuant to 35 U.S.C. § 284;

L. That the amount of damages awarded to Plaintiff to compensate Plaintiff for
infringement of the BULLSEYEBORE Patents be increased by three times the amount thereof,
as provided by 35 U.S.C. § 284;

M. That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

 i. using the BULLSEYEBORE Works or any reproductions, copies, or colorable imitations thereof in any manner with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized  BULLSEYEBORE Products or is not authorized by Plaintiff to be sold in connection with the BULLSEYEBORE Works;

 ii. passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the BULLSEYEBORE Works;

 iii. further infringing the BULLSEYEBORE Works and damaging Plaintiff's goodwill;

 iv. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which directly use the BULLSEYEBORE  Works and which are derived from Plaintiff's copyrights in the BULLSEYEBORE  Works; and

 v. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which are derived from Plaintiff's copyrights in the BULLSEYEBORE Works;

O. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Alibaba,

AliExpress, Amazon, CJ Drop Shipping, DHgate, eBay, Joybuy, Shopify, Temu, Wish, and Walmart; payment processors such as: PayPal, Stripe, Payoneer, LianLian, and Google Pay; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of

     i. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which reproduce the BULLESEYEBORE Works or are derived from the BULLSEYEBORE Works, including any accounts associated with the Defendants listed on Schedule A;

     ii. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which are derived from the BULLSEYEBORE Works; and

     iii. take all steps necessary to prevent links to the Defendant accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant accounts from any search index;

P. For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights its federally registered copyrights pursuant to 17 U.S.C. §501; and b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

Q. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiff, in an amount to be determined at trial;

R. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

S. That Plaintiff be awarded any and all other relief that this Court deems equitable and just. Plaintiff demands trial by jury as to all causes of action so triable.

> Respectfully Submitted,
> /s/ Andrew C. Aitken
> Andrew C. Aitken, Esq (# 06413)
> 6701 Democracy Blvd., Suite 555
> Bethesda, Maryland 20817
> (301) 537-3299
> acaitken@aitkenlawoffices.com
>
> Attorney for Bullseyebore, Inc.

## Verification

I, John Cerwin, declare as follows:

1. I am the President of Plaintiff Bullseyebore, Inc, a citizen of the United States of America, and a resident of the State of Illinois.
2. I have reviewed the Complaint in this matter and believe that all factual allegations that I have personal knowledge to be true and correct. Further, to the extent that allegations are made on information and belief, I have evidence and a good faith basis to make such allegations.
3. With respect to any allegations in the Complaint that I lack personal knowledge, the allegation are made based upon my review of the specified information including websites of the Defendants, Domains name registrars, Instagram ads, Facebook stores, Redditt message boards, and summary records made available to the public relating to corporate filings in the United Kingdom.
4. If called on to testify I would competently testify as to the matters stated herein.
5. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct.

Executed on _January 24, 2024_

John Cerwin
President
Bullseyebore, Inc.