IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MARYLAND

Baltimore Division

| | |
|---|---|
| **BULLESEYEBORE, INC.**, | ) |
| | ) |
| Plaintiff, | )  . |
| | ) |
| v. | ) Civil Action No. 1:24-cv-00246-RDB |
| | ) |
| **LANDBASE TRADING CO. LTD, and** | ) |
| | ) |
| **MANNER TRADING CO . LTD, and** | ) |
| | ) |
| **Maoyun Zhou,  and** | ) |
| | ) |
| **Yanbo Zhao, and** | ) |
| | ) |
| **DOES 1-9** | ) |
| | ) |
| Defendants. | ) |

**Plaintiff's Motion for Temporary Restraining Order and Other Relief**

Plaintiff, Bullseyebore, Inc. ("Bullseyebore"), through counsel, respectfully that this Court enter a Temporary Restraining Order ("TRO") in the above-captioned matter against Defendants and Defendants' vendors PayPal, Inc. Meta, Inc. and the Domain Registrars identified  herein. Specifically Plaintiff seeks an order:

(1)    requiring PayPal to freeze all accounts owned or controlled by the Defendants associated with Web Stores identified in Schedule A to the Verified Complaint  upon receiving notice of the TRO;

1

(2) freeze funds in any U.S.-based financial institutions that are associated with said PayPal accounts or otherwise hold funds of the Defendants in such accounts upon receiving notice of the TRO;

(3) order the domain registrars Namesilo, LLC and Alibaba Cloud Computing Ltd. to lock the domains owned by the Defendants as identified in Schedule A to the Verified Complaint;

(4) order all Defendants with notice of this order to immediately discontinue use of the Plaintiff's Copyrighted Works and Bullseyebore Trademarks;

(5) permit Plaintiff to conduct limited expedited discovery directed to PayPal and Defendants in order to determine the amount and location of the revenue and profits that directly associated with Defendants' infringements and the scope of their activities for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (b), and the Copyright Act, 17 U.S.C. § 101, et seq.;

(6) permit Plaintiff to serve Defendant by sending correspondence via mail and email to the addresses listed on the accused websites or, when no address is provided, by email;

(7) issue an order to show cause why any temporary restraining order issued by the Court should not be converted into a preliminary injunction.

## FACTUAL BACKGROUND

1.      Bullseyebore filed its Verified Complaint against Defendants for copyright infringement, false designation of origin under the Lanham Act, patent infringement, common law trademark infringement, and civil conspiracy against the companies, partnerships, individuals, and/or incorporated associations identified in Schedule A (together "the Defendants"). Each of the Defendants operates one or more Web Stores that sell drill alignment devices using Plaintiff's copyrighted photographs, videos, and trademarks to sell their competing devices.

2.     Bullseyebore developed a novel drill alignment device designed to be attached to hand-held drills which projects a laser to a work surface.  The Bullseyebore Product is subject to US Patents Nos. US7992311 B2 (The '311 Patent)  and US No. US10150167B2 (The '167 Patent) and pending patent applications.

3.     Bullseyebore's predecessor in interest. New Governance, Inc. initiated sales to commercial accounts of Bullseyebore Products to aircraft manufacturer Boeing Company, Inc. in January 2023 and then to builder Viking Spas, Inc. in March 2023 using the Bullseyebore trademark.  Ex. A to the declaration of Andrew C. Aitken in Support for Plaintiff's Motion for Temporary Restraining Order and other Relief, ("Aitken Declaration;" All Exhibits relied on herein are to the Aitken Declaration).

4.     In anticipation of a commercial launch to the consumer market, Bullseyebore published images and videos of its Product on its website in October 2023 www.bullseyebore.com (Ex. B), on YouTube videos (Ex. C),  on TIKTOK (https://www.tiktok.com/@bullseyebore) (Ex. D) ,  on Instagram (https://www.instagram.com/bullseyebore ). Ex. E  and Facebook. Ex. F.

*5.*     Bullseyebore's YouTube videos that promoted the device had more than 6,000 views since December 11, 2023 (https://www.youtube.com/watch?v=2SugRirRcrQ ) (Ex. C) and its BULLSEYEBORE Instagram page has more than 3,000 followers. Ex. E.

6.     On December 29th, 2023  an affiliate of Bullseyebore featured the Bullseyebore Product in Instagram and TikTok posts that attracted a  reported 70 million views and 515,000 "likes." Ex. G.

7. As set forth in Exhibits A-F Bullseyebore uses its distinctive trademarks in association with its website and its advertising, sales, promotion and marking of its device as depicted below:

  

8. Plaintiff has applied for a US trademark registrations for the Bullseyebore logo marks depicted above and applications U.S. Nos. 98353255 and 98369472 are currently pending.

9. Bullseyebore registered its copyrights for the photographs it uses on its website and Facebook page which are exemplified by the images below with the US Copyright Office. Ex. H (Copyright registration certificate). A complete set of the registration photographs are attached as Ex. I.

  

 

10. Plaintiff also created a series of videos featuring the Bullseyebore Product that were published on its webpage, YouTube and on Instagram (Plaintiff's Videos). While Plaintiff has not yet secured a copyright registration for Plaintiff's Videos, it owns the common law copyright in the videos. Plaintiff's Videos include the diplay of its  Bullseyebore Trademarks.

11. After the initiation of the Bullseyebore advertising campaign by Plaintff, each of the Defendants listed on Schedule A of the Verified Complaint launched a website or websites that use the Plaintiff's copyrighted photos (Ex. H and I) ) in connection with offers for sale of their competing device refered to as the "AlignDrill Pro" (the Accused Products).  Ex. J.

12. Defendants' unauthorized use of Plaintiff's images constiutes infringment of its copyrights and  falsely suggest that each Defendants will provide Plaintiff's genuine Bullseyebore Products in response to purchase orders made though these interactive websites.

13. Each of the Defendants' websites also use Plaintiff's Videos which use Plainitiff's Trademarks and this use constitutes trademark infrigement under 35 USC 1125,  Section 43(a) and common law infringment. Defendants' websites falsely advertise and represent or suggest that they will provide Plaintiff's genuine Bullseyebore Products in response to purchases made on the interactive websites.  Ex. J.

14. In addtion to the illegal use of the Plaintff's copyrighted images, videos and trademarks, other design elements of the accused websites are highly similar or identical to each other including, identical text used to describe the products, similar page layouts, arrnagement of graphics,e payment authorization links, substantially simlar prices ($24.98 or 25.98),. Ex. J

15. Each of the Defendants uses URLs registered through one of two companies, NameSilo LLC or Alibaba Cloud Computing Ltd. d/b/a HiChina. Ex. K.

16. Six of the accsued websites are commonly owned by Defendant Landbase Trading Co., Ltd. which, on infomaton and belief, is a company organized under the laws of the UK and is controlled by Directors, Defendants Maoyun Zhou and Yanbo Zhao. Ex. L.   There have been numerous consumer complaints, including fraud claims, that have been made against Landbase Trading on PayPal message boards. Id.

17. Four of the accused websites are commonly owned by Defendant Manner Trading Co., Ltd. ("Manner Trading") which, on information and belief, shares a director with Landbase Trading, namely Mr.  Mr. Yanbo Zhao. Ex. M.

18. Plaintiff has never licensed its Bullseyebore Copyrights or Trademarks and has no authorized distributors. Verified Complaint at ¶ 30.

19. The nature of the infringment shown  is willful and the extent of related sites offering infringing prodeucts that use identical images to thise registered by Plaintff is widespeard and growing.   There are at least 20 different Web Stores that all use the same copyrighted images and Plainitff's trademarks in connection with the sale of infrining products.

20. In addition to the Defendants' Web Stores, there have been over 255 ads run by Defedants enttities on the Meta Platform, (Facebook and Instagram) that infringe on

6

BullseyeBore Inc's registered copyrights and its trademarks which diverting sales from Bulleyebore. Ex. N.

.

## II. THE LEGAL FRAMEWORK GOVERNING TEMPORARY RESTRAINING ORDERS

A temporary restraining order ("TRO") or a preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *See Sci. Sys. & Applications v. United States*, No. PWG-14-2212, 2014 U.S. Dist. LEXIS 99165, at *9-10 (D.Md. July 22, 2014); See also *League of Women Voters of N.C. v. North Carolina* , 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.* , 555 U.S. 7 (2008) ); *Wilson v. Williams* , 2019 WL 4942102, at *1 (D.S.C. Oct. 8, 2019). The movant must establish all four elements in order to prevail. *Pashby v. Delia* , 709 F.3d 307, 320–21 (4th Cir. 2013).

"To obtain preliminary injunctive relief, Plaintiffs bear the burden to show that they are likely to succeed on one of their claims. See, e.g. , *Stinnie v. Holcomb* , 355 F. Supp. 3d 514, 527 (W.D. Va. 2018)." *Profiles, Inc. v. Bank of Am. Corp*., 453 F.Supp.3d 742 (D. Md. 2020). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land* , 915 F.3d 197, 216 n.8 (4th Cir. 2019).   "When the balance of harms decidedly favors the plaintiff, he is not required to make a strong showing of a likelihood of success. ..." *James A. Merritt & Sons, Inc. v. Marsh,* 791 F.2d 328, 330 (4th Cir 1986);  "The need for plaintiff to show likelihood of success on the merits increases as the probability of irreparable injury to plaintiff without an

injunction decreases." *Maryland Undercoating Co., Inc. v. Payne,* 603 F.2d 477, 481 (4th Cir. 1979)

"A District Court can [also] order an asset freeze as part of injunctive relief only with respect to assets in which an equitable interest is claimed and established." *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.,* 527 U.S. 308 318-33 (1999)).

Additionally, with respect to temporary restring orders, Federal Rule of Civil Procedure 65(b)(1) provides:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

The normal reason for proceeding without notice is that the opposing side is unable to be found or the identity of the opposing side is unknown. *First Tech. Safey Sys. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). In some limited circumstances, proceeding without notice is also justified upon a showing that notice would lead to the destruction of evidence. *Id.* at 650-51. Pursuant to Rule 65(b)(1), courts have granted *ex parte* TROs "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1131 (9th Cir. 2006).

### III. PLAINTIFF HAS SHOWN THAT A TEMPORARY RESTRAINING ORDER IS WARRANTED AND IT HAS MET ALL THE REQUIREMENTS

The evidence of willful copyright and trademark infringement in this matter is overwhelming. The Defendants copied multiple images of Plaintiff's products as well as

Plaintiff's Bullseyebore Trademark and then used these materials to falsely represent to the public that it was offering such products for sale.

In this circumstances, it is submitted that the notice requirements of Rule 65 should be excused in view of the clear infringement and the danger of the destruction of evidence. Further, since the evidence strongly suggests that these foreign-based Defendants are defrauding consumers if notice is given, it is likely that the existing Web Stores will be closed, new stores will be opened, and sales will continue to be diverted from Bullseyebore. In addition any funds that remain in PayPal or merchant accounts will likely be removed from the reach of the US courts. Ten of Defendant Web Stores which lack any information regarding in the identity of the owner. The remaining Web Stores that are owned by Landbase Training and Manner Trading are commonly controlled and, on information and belief, are connected to Chinese suppliers. Pursuant to Rule 65, in support of this request to proceed without notice is supported by the Declaration of Andrew C. Aitken. ¶ 18.

**(1) Plaintiff is Likely to Succeed on the Merits.**

With regard to Plaintiff's copyright claims, each of the Plaintiff's registered photographs is being used on each of the Defendants' Web Stores. The photographs are exact replicas of Plaintiff's registered copyrighted Works, and on information and belief, were copied from Plaintiff's website. These photographs used by Defendants to advertise their product, depict the Plaintiff's Bullseyebore Product. *Compare* Exhibit J (Accused Websites) Exhibit I (Copyrighted Images)

Plaintiff is also highly likely to succeed on its Lanham Act false designation of origin claims. Each of the accused websites stores displays the Plaintiff's Bullseyebore Trademark

within the Video's that are presented in connection with defendants advertising. These videos were also copied from Plaintiff's websites or YouTube site.

Plaintiff is also highly likely to succeed on its false advertising claims. In this regard, Defendants use of Plaintiff's copyrighted images, videos of Plaintiff's products, and Plaintiff's Trademarks in connection with its advertising of the AlignDrill Pro products falsely suggests to consumers that, in response to a purchase order made through the accused Web Stores, will be supplied with Plaintiff's Bullseyebore Products of the parties are somehow related or affiliated.

Finally, Plaintiff is likely to prevail on its conspiracy claims. As set forth above, each of the accused Web Stores uses the same infringing photographs, uses the same videos taken from Plaintiff's website, have highly similar graphical layouts, have the similar payment links, have URLs domains from one or two providers, offer a product that is identified as the "AlignDrill Pro," and sells the product at the same or similar lower price. On information and belief, all of the Web Stores were created with the past 25 days, shortly after marketing for the Bullseyebore device went viral.

**(2) Plaintiff will suffer irreparable harm in the absence of preliminary relief.**

In view of the trademark and false advertising claims, the harm to Plaintiff is presumed. Section 34 of the Trademark Act of 1946 (15 U.S.C. 1116) provides

> " The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office *or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title*. A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order. (emphasis added)

**(a)** *Since Plaintiff has Clearly Established Trademark Infringement Claims There is a Presumption of Irreparable Harm.*

While the Bullseyebore Trademarks have not yet been registered, Plaintiff has conclusively established common law right to the Bullseyebore trademark by its exclusive use since at least as early January of 2023. Ex. A.  The mark is distinctive and not descriptive of the products, namely drill alignment products. Plaintiff has sold products using the marks to the Boeing Co and specialty builders and has initiated extensive marketing and sales campaigns using the Bullseyebore Trademark directed to the consumers launch of the Product scheduled for late January 2024. These marketing and advertising efforts have reached hundreds of thousands of consumers.  A screen grab of the Bullseyebore Instagram page and Bullseyebore  website that depict the mark is set forth below.




The Plaintiff has two pending applications with the US Trademark Office for the Bullseye Logos. See Application Nos. 98353255 and 98369472.

While the marks are not yet registered, 15 U.S.C 1116, explicitly covers Section 1125 of the Laham Act which allows suits for false designation of origin, and therefore affords the presumption of irreparable harm.  Plaintiff has made false designation of

11

origin claims against each of the Defendants in Count II of its Complaint and has provided compelling and unequivocal proof.

As an example of the infringement under 1125(a)(1)(A), the following screen captures from an exemplary Accused Websites (Ex. J, p. 3) that used the Bullseyebore marks are depicted below:



A complete list of the 20 Defendants Web Stores that depict the infringement of the Plaintiff's copyrights and trademarks is provided in Exh. J.

> **(b)** *Since Plaintiff has also clearly established its false advertising claims there is a presumption of irreparable harm*.

Count IV of the Complaint alleges false advertising under the Lanham Act, 15 U.S.C. 1125(a)(1)(B) which provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,…
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In *Time Warner Cable Co. v. DIRECTV, Inc*., 497 F.3d 144 (2d Cir. 2007) the 2nf Circuit confirmed the presumption of irreparable harm in false advertising cases. "A claim of false advertising may be based on at least one of two theories: 'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'" *See also Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93, 112 (2d Cir. 2010) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 153 (2d Cir. 2007)). "Under either theory, the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product." *Time Warner Cable*, 497 F.3d at 153 n.3.

Each of Defendants Web Store pages, Facebook pages, Facebook Ads, or Instagram advertisements show use of Plaintiff's Bullseyebore Products in a number of different applications. These advertisements use Plaintiff's images and videos and never depict the phantom "AlignDrill Pro" product that is offered for sale. The use of Plaintiff's Bullseyebore products to purportedly depict the performance of a competing products inherently misrepresents and suggests to consumers that the competing products are the same as or will perform identically as Bullseyebore Products. This is a false or misleading representation that is directed to an inherent material and quality of the products and a violation of Section 1125. Consequently, irreparable harm should be presumed.

**(c)** *Plaintiff has also been irreparably harmed by defendants' infringement of its copyrights.*

With respect to copyright claims, in contrast to claims for Trademark infringement, there is split among courts as to whether irreparable harm should be presumed at the preliminary injunction stage or that Plaintiff has the burden to prove such harm. In this regard, some courts have held that the rationale in *eBay Inc. v. MercExchange, L.L C.*, 547 U.S. 388 (2006), which applied patent cases, was also applicable to claims for copyright infringement. Other courts have recognized a presumption of irreparable harm as a one consideration in the decisions about whether to issue injunctions and distinguished or otherwise did not follow *MercExchange v. eBay. See Salinger v .Colting*, 2009 WL 1916354, at *16, n. 6.; *Lennon v. Premise Media Corp*., 556 F. Supp. 2d 310, 319 n.1 (S.D.N.Y. 2008).

A 4th Circuit decision that predated *MercExchange v. eBay* only required a plaintiff to make a prima facie showing of copyright infringement and, the court found that upon such a showing, a Plaintiff establishes a presumption of suffered irreparable harm and would likely succeed on the merits. *Service & Training, Inc. v. Data General Corp.,* 963 F.2d 680, 690 (4th Cir.1992). To establish a prima facie case of copyright infringement, the plaintiff must prove that the plaintiff owns a valid copyright and that the defendant copied the original elements of the copyrighted work. *Keeler Brass Co. v. Continental Brass Co*., 862 F.2d 1063, 1065 (4th Cir.1988). Because direct evidence of copying is seldom available, courts presume copying if the plaintiff shows that the alleged copier had access to the work and that the original work and the alleged copy are "substantially similar." Id. In this case, the accused works were published on Plaintiff's

website and the Defendants had access.  The accused infringing images are identical to copyrighted work. See Ex. J and Exh I.

Regardless of whether irreparable harm should be presumed, Plaintiff has shown that the harm is irreparable. Defendants' use of Plaintiff's copyrighted photographs was critical to Defendants' ability to advance their counterfeiting scheme and has harmed Plaintiff.  On information and belief, not only are Defendants unable to deliver genuine Bullseyebore Products as advertised, on information and belief, Defendants have no current products to supply.  There are no images of the phantom "AlignDrill Pro" products on any of Defendants' webpages.  As such, Defendants' ability to offer for sale a product in competition to Plaintiff was dependent on its illegal copying of Plaintiff's photos, videos and trademarks. This infringement has allowed the Defendants to unfairly compete which has resulted in lost sales, trademark tarnishment and, on information and belief, a reluctance by consumers to pay Plaintiff's higher suggested retail price.

The damages by Plaintiff are causing immediate and irreparable harm to Bullseyebore. For example, various social media pages of Defendants' reported sales of more than 5000 units that used the Bullseyebore copyrighted photos and trademarks.  At the same time, Defendants are offering for sale its products at less than one-half the retail price of the Bullseyebore products. On further information and belief, Plaintiff's ability to secure monetary damages from these known and unknown foreign defendants is uncertain and unlikely

### C. Balance of the Equities

It is submitted that the balance of the equites strongly favors Plaintiff.  Plaintiff's intellectual property that covers its Bullseyebore product was brazenly and illegally taken to

unfairly compete. The Defendants are using Plaintiff's intellectual property to perpetrate fraud. Moreover, Defendants then used these materials to defraud consumers. Defendants have no equitable position in these circumstances.

### D. It is in the Public Interest to Grant the Injunction.

It is self-evident that it is in the public interest to stop counterfeit products from entering the stream of commerce from unknown origins. Further, it is in the public interest to stem consumer fraud and protect the intellectual property rights of those innovative businesses that compete fairly in the marketplace.

## CONCLUSION

Plaintiff has a right to relief and remedy and has suffered and will continue to suffer immediate, substantial, and irreparable harm before a full adversarial hearing can be had. Wherefore, for the foregoing reasons, the motion for temporary injunction should be granted.

Respectfully submitted,
/Andrew C. Aitken/
Andrew C. Aitken Bar No. (# 06413)
IP Law Leaders PLLC
6701 Democracy Blvd., Suite 555
Bethesda, Maryland 20817
(301) 537-3299
acaitken@aitkenlawoffices.com