IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MARYLAND

**Baltimore Division**

| | |
|---|---|
| **BULLESEYEBORE, INC.,** | ) |
| | ) |
| Plaintiff, | ) . |
| | ) |
| v. | ) Civil Action No. 1:24-cv-00246-RDB |
| | ) |
| **LANDBASE TRADING CO. LTD., ET AL.** | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO SET ASIDE THE DEFAULT**

Plaintiff, Bullseyebore Inc., through counsel, responds to Defendants' Motion to Set Aside the Clerk's Entry of Default ("Motion").

**I.      INTRODUCTION**

The Fourth Circuit considers the following factors when deciding whether to set aside an entry of default; (1) a district court should consider whether the moving party has a meritorious defense, (2) whether it acts with reasonable promptness, (3) the personal responsibility of the defaulting party, (4) the prejudice to the party, (5) whether there is a history of dilatory action, and (6) the availability of sanctions less drastic. *Payne ex rel. Estate of Calzada v. Brake,* 439 F.3d 198, 204-05 (4th Cir.2006).  It is submitted that since Defendants have not advanced a meritorious defense, did not act promptly and have not provided an explanation for the failure to timely respond to the Third Amended Complaint, the Motion should be denied.

**1.  DEFENDANTS DO NOT HAVE MERITORIOUS DEFENSES**.

Defendant primarily relies on alleged procedural defect of service and an alleged lack of jurisdiction as its defenses in the lawsuit to aside the default.  With respect to the core allegations, namely the allegations of  infringement of Plaintiff's copyrights and its claims of false advertising that includes depiction of Plaintiffs  products and its trademark in connection with their marking and sale of competing products, Defendants offer no substantive defense.

### A.    *Defendants had actual notice of the complaint and the related proceedings*.

Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court. *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). Regarding service, the cases relied upon by Defendants involve circumstances where the service was defective and resulted in the lack of  lacked knowledge of the lawsuit. For example, in *Quarles v. Wells Fargo Bank, N.A.,* Case No. 2022 WL 952025 *2 (D. Md. Mar. 30, 2022) a first Defendant contended that it had not been served with process of plaintiff's State Court Complaint nor any subsequent pleadings since the removal and,  that it only learned of the suit in this Court as a result of a mediation in the state court appeal on April 4, 2021.  The first defendant only learned of the "after the entry of default against a fictional non-entity" named by Plaintiff.  Further, neither the first nor second defendants had been served with any pleadings from Plaintiff, including the application for default judgment.

In *Turner v. Lowden,* No. 12-cv-1372-RDB, 2013 WL 5634325 *4 (D. Md. Oct. 15, 2013), service was defective because Plaintiff had attempted service on defendant using an address that Defendant denied that it has (or ever did have) an office at that address.  The defendant also denied that that address was ever used by its resident agent and the address supplied by plaintiff does not match the address for its resident agent on file with the  Maryland State Department of

Assessments and Taxation or the Texas Secretary of State. Further, there was no indication that any other communications from the plaintiff to defendant that some action in response to a complaint was necessary, as would have been clear had the summons been properly served.

Here, counsel for Defendants clearly had notice of the lawsuit and the Third Amended Complaint for months before acting. Defednants counsel had appeared and participated in the case and were therefore provided a copy of the Third Amended Complaint on April 12, 2024 by ECF. DCK 49. The Third Amended Complaint was subsequently served by email by Defendants and counsel for Defendants received a notification of the return of the summons and a certificate of service on May 19, 2024 by ECF. DCK 55. Plaintiff did not immediately act to seek default after the response deadline had passed, but rather waited another week, and, on May 28, 2024 requested that the clerk enter default. DCK 58.

Two weeks later, on June 11, 2024 Defendants' counsel that had previously appeared on behalf of certain "websites" (DCK 29, 30) filed a second notice of appearance on behalf of the owners of the websites. DCK 60, 61. On or about June 12, 2024 counsel for Plaintiff received a communication from counsel for Defendants seeking an extension to file their response. Counsel for Plaintiff was traveling overseas in Ireland and was attending scheduled events each day. Since counsel did not expect to be able to reach his client in view of time zone issues and his schedule, counsel agreed to a week extension in which to Defednants could respond to the pleadings, and the possibility of additional time if needed. Defendants did not timely seek or file the request for more time and the clerk entered default later that day. DCK 62.

In this case, Plaintiff sought permission to serve the John Doe defendants in this action *via* email in view of the secretive, and in some cases deceptive representations of the real parties in interest and considering the clear infringement of the copyright and false advertising

3

constituting immediate and irreparable harm, such manner of notice was justified.  Its request was granted. When the was manner of service was approved, Plaintiff did not know that the defendants were Chinese entities.

The ownership of the accused websites that display the copyrighted images and used Defendant's trademarks was not only hidden from the public, but many websites also appeared to purposefully misrepresent the ownership of the website. For example the following websites indicated that they were owned or associated with "Landbase Trading Co., Ltd." ("Landbase Trading") of Cardiff, UK.

| | Owner | Website | Admitted US Sales | US Server |
|---|---|---|---|---|
| 1 | Larryhot Trading Company | wow-gogerous.com butterfly-flowerss.com Amp-spring.com autumn-beckon beast-fox.com (DCK 31-6) | Yes | Yes |
| 2 | Shenzhen Maoluhui Network Technology Co., Ltd. | recreation.com (DCK 31-9) | No | No |
| 3 | Topli Trading Co., Ltd | slightlity.com | Yes | No |
| 4 | Adah Technology Co., Limited | vofatiponal.com (DCK 31-2) | No | Yes |

However, when  the ownership of these respective websites was eventually revealed in declarations, there was no reference to any such association with Landbase Trading (See DCK 31-2 through 31-14) nor was there any indication that the owners of these sites were related Chinese or Hong Kong entity.  When opposing counsel identified the Defendants, each was represented to be a Chinese or Hong Kong entity, but the declarations failed to provide any address for any of the owners, once again frustrating Plaintiffs ability to serve the Defendants by conventional means or test the veracity of the statements made therein. *Id*.

4

A number of other websites indicated that they were owned or were associated with Mannor Trading Co., Ltd. (Mannor Trading"),  in Cambridge UK:

| | Defendant Owner | Website | Admitted US Sales | US Server (DCK 7-12) |
|---|---|---|---|---|
| 5 | Shenzhen Jiuan Yunchen Network Technology Co., Ltd. | Olarglscal.com (DCK 31-8) | No | No |
| 6 | Nanchang Huimeng Network Technology Co., Ltd. | Purist-fish.com (DCK 31-7) | No | Yes |
| 7 | Awin E-commerce Limited | Fundamentak.com (DCK 31-3) | No | No |

Yet, once again, when  the ownership of these respective websites was revealed, no mention of Manner Trading was mentioned, no relationship between the parties was disclosed and no addresses were provided. DCK 31-2 - DCK 1-14. Some of the websites listed phantom addresses for the respective businesses: See Butterfly-flowers.com, Dilberville, MS owned by Larryhot Trading Company; Creampumkin.com, 422 Richard St. Vancouver BC and San Francisco, CA. owned by Dongguan Hengjia E-Commerce Co. DCK 7-11.

Other websites provide absolutely no information with respect to the identity of the owner that purposefully frustrated Plaintiff's ability to locate and serve the accused entity.  The only information provided was an email address. DCK 7-11.

| | Owner | Website | US Sales | US Server |
|---|---|---|---|---|
| 1 | Larryhot Trading Company | wow-gogerous.com amp-spring.com autumn-beckon beast-fox.com butterfly-flowerss.com (DCK 31-6) | Yes | Yes |
| 2. | Shenzhen Zhongtou Guorong Trading Co., Ltd. | oncondtitat.com (DCK 31-10) | No | No |
| 3. | Dongguan Hengjia E-Commerce Co. | dawnnaza.com creampumkin.com | Yes | Yes |

| | | begoniaclothing.com (DCK 31-4) | | |
|---|---|---|---|---|
| 4 | Suzhou Chenghe Network Technology Co. Ltd. | rise-planet.com (DCK 31-11) | No | Yes |
| 5 | Elay E-Commerce Co. Ltd. | Certainow.com (DCK 31-5) | No | No |
| 6. | Suzhou Ruoxing Network Technology Co. Ltd. | Rotayalyte.com | No | No |

In view of the absence of information and misinformation provided on the websites, providing notice of the lawsuit and complaint by email was reasonable and justified. Rule 4(f)(3) provides for a wide range of alternative service methods as it authorizes service "by other means not prohibited by international agreement as may be directed by the court." Notably, service of process under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (2002).

A "district court, in exercising the discretionary power permitted by Rule 4(f)(3), may require the plaintiff to show that they have 'reasonably attempted to effectuate service on defendant and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile.'" *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (quoting *Ryan v. Brunswick*, 2002 WL 1628933, *2 (W.D.N.Y. 2002)). *See also Royaltystat, LLC v. IntangibleSpring Corp*., No. CV PX 15-3940; 2017 WL 219372 (D. Md. Jan. 19, 2017), ECF No. 36), (Setting forth Plaintiff's efforts to find Defendant Pacheco and serve Defendant IntangibleSpring which satisfied the Court's requirement.)

In this case, it is submitted that Plaintiff's method of service was "reasonably calculated" to give notice to defendant and, on information and belief, is not prohibited by international agreement. See *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *See*

*also Royaltystat, LLC v. Intangiblespring, Corp.*, Civil Action No. PX 15-3940 (D. Md. Mar 09, 2017); *Hawthorne Indus. Prods. v. M/V Tac Imola,* Civil RDB-22-1376 (D. Md. Jan 05, 2023)

Plaintiffs have served Defendant by ECF through their United States counsel under Rule 4(f)(3) in addition to email. On information and belief, service on Defedants counsel is not prohibited by international agreement, and since Defendants United States Counsel is domestic, international agreement is inapplicable. *See Hawthorne Indus. Prods. v. M/V Tac Imola,* Civil RDB-22-1376 (D. Md. Jan 05, 2023) (ECF No. 73-1 at 13.) The service on Defendants' United States counsel is "reasonably calculated to give them actual notice" because counsel has appeared and participated in this action. Defendants have been in communication with their United States counsel as their representatives have submitted declarations in this lawsuit. (DCK 31-2 DCK 31-14.  Counsel has an obligation to report service of process to their clients. To the extent that email service is ineffective, it is submitted that service on Counsel should be recognized since it is reasonably calculated to give notice to the Defendants.

Even if the service was found to be defective, the remedy is not the dismissal of the lawsuit as Defendant argues at Page 15 (DCK 76-1, pp 16 ) . Plaintiff would be given an opportunity to effect service as expressly provided by the Hague Convention or as set forth in *Hawthorne v M/V Tac*.

### B. This Court has Jurisdiction Over Each of the Defendants

To the extent that the court is willing to consider substantive argument on jurisdiction on the merits in this submission, Plaintiff disagrees that Defendants' argument that the court lacks jurisdiction is meritorious, and in any event, the defense should be considered to be waived or rejected under *res judicata* principles.

In summary, the Defendants that brought the present motion previously made a tactical decision  to litigate in this lawsuit on behalf of the "websites" or "John Does" and not the

respective owners of the website.  The same counsel that now appears on behalf of the website owners that had previously moved to dismiss the complaint (DCK 31) and opposed the entry of the Preliminary Injunction (DCK 38).  Upon the revelation of the identity of the websites' owners in their motion, Plaintiff sought and obtained leave to Amend its Complaint to  name these legal entities as Defendants. Defendants' counsel received the complaint on the date it was filed by ECF. DCK 49.  Plaintiff also served each defendant by email  as permitted by the Court's TRO and Preliminary Injunction. DCK 55.

       The real party in interest for each of these websites, who have now been named, now seek to set aside the default and cites to the same jurisdictional arguments previously raised with respect to their motion filed by the websites. Since these  Defendants previously made these same  jurisdictional  arguments under aliases, they should now be precluded from repeating the same arguments under principles of *res judicata.*  The Court should reject this ill-advised trial tacit and not allow Defendants a "do over."

       It is also submitted that Defendants' actions should serve as  waiver of the jurisdictional arguments because each had the opportunity to raise these arguments on their own behalf in the previous motion to dismiss but chose to refrain from advancing the arguments on behalf of the real parties in interest.  *Res judicate* principles also apply because this court has considered these same issues and found that, in view of the manner in which they were raised, were moot.

       While subject-matter jurisdiction is a mandatory prerequisite for a federal court to act, the requirement that the court have personal jurisdiction over a defendant is a personal right that a defendant can choose to assert or not. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–704 (1982). That means that a personal jurisdiction defense is both forfeitable and waivable. *Sickle v. Torres Advanced Enter. Sols.*, LLC, 884 F.3d 338, 344 (D.C.

Cir. 2018). Personal jurisdiction "can be waived at any stage of a proceeding." *Spann v. Colonial Village,* 899 F.2d 24, 32–33 (D.C. Cir. 1990).

To extent that the court finds that Defendants have not waived their jurisdictional arguments, the arguments are not meritorious. Some of the defendants were previously demonstrated to have made infringing sales in Maryland. Others have been shown to have made sales in the United States and this court can exercise jurisdiction over them under Fed R. Civ. P. 4 (k)(2)  ("[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant" in the following circumstance: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.").

Defendants argument that this Court lacks jurisdiction with respect to some of the Defendants are based on the premise of an absence of sales of the Align Drill in Maryland.  But these arguments fail to address controlling authority that establishes that the Maryland Court may exercise jurisdiction based upon national contacts where, as here, federal causes of action are alleged, including copyright, patent and Lanham Act claims. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009).  *See also Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1219 n. 22 (11th Cir.2009); *Holland Am. Line Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 461 (9th Cir.2007); *Adams v. Unione Mediterranea DI Sicurta*, 364 F.3d 646, 651 (5th Cir.2004*); ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 551-52 (7th Cir.2001) "[I]f the defendant contends that [it] cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l*, 256 F.3d at 552 (citations omitted). At least five of the websites owned by four Defendants have made such sales.  *See Infra* at pp. 4-6.

With respect to those Defendants that may have absence of sales in the United States, each of the Defendants websites have broadcast more than a dozen of Plaintiff's copyrighted images to the United States and used its trademarks in their marketing and adverting efforts directed to consumers in the United States. In addition to the displays in their respective websites, Defendants have advertised on Facebook and Instagram reaching consumers in the United States and, on information and belief,  have purchased search terms that direct consumers in the United States to their sites.  The broadcasting of copyrighted images and targeting of the United States market subjects these Defendants to the jurisdiction of the United States courts. *See Spanski Enterprises, Inc. v,  Telewizja Polska, S.A.* 883 F.3d 904,  (D.C. Cir. 2018) ("Here, although it was in Poland that TV Polska uploaded and digitally formatted the fifty-one episodes, the infringing performances—and consequent violation of Spanski's copyrights—occurred on the computer screens in the United States on which the episodes' "images" were "show[n]." *Id* . § 101. Accordingly, because "the conduct relevant to the statute's focus occurred in the United States," this case "involves a permissible domestic application" of the Copyright Act, "even if other conduct occurred abroad.")  While the mere fact that a United States citizen may be able to view an infringing work on the internet does not, on its own, cause a foreign infringement to be subject to United States copyright laws, when a plaintiff can show additional factors such as (1) the direction of copyrighted material into the United States; (2) when foreign "acts are intended to, and do, have an effect within the United States"; and (3) the uploading of copyrighted materials to servers located in the United States, copyright claims may be adjudicated by the United States courts. *See State St. Global Advisors Trust Co. v. Visbal*, 431 F.Supp. 3d 322, 340 (S.D.N.Y. 2020). In addition, when the copyrighted images are stored on serves located in the United States, jurisdiction may be exercised. *Richardson v. Complex Media, Inc*., 2021 WL

230192 (S.D.N.Y. Jan. 22, 2021) (allegation that servers with copyrighted images were located on a server located in the United States was sufficient to sustain jurisdiction).

In this case Plaintiff has alleged that Defendants directed Plaintiffs' copyrighted materials to consumers in the United States for the purpose of unfairly competing with Plaintiff. The various websites include representations of the American Flags and include shipping options to select the United States reflecting a purposeful targeting of the United States market. Each of the websites has made sales to consumers in the United States of other products corroborating Defednants' intent to target the United States market.

In addition, the websites operated by Larryhot trading (wow-gogerous, butterfly-flowerss, amp-spring, autumn-beckons, and beast-fox );  Dongguan Hengjia E-Commerce Co. (begoniacloting.com, creampumpkin.com, and dwnaza.com); Nanchang Huimeng Network Technology Co., Ltd. (Purist-fish.com) and  Suzhou Chenghe Network Technology Co. Ltd. (rise-planet.com) use as a  Namesilo, LLC, as a vendor that, on information and belief operated servers in Miami, Florida. (DCK 7-12)

The court should reject this contention as a basis for setting aside the default.

## 2. THE DEFENDANTS DID NOT ACT WITH REASONABLE PROMPTNESS AND WERE PERSONALLY RESPONSIBLE FOR DEFAULTING.

The Defendants began to participate in this case big in March 2024 when counsel appeared on behalf of the various websites. DCK 30.. The Defendants' counsel was notified of the filing of the Third Amended Complaint on April 12, 2024 when it was filed by ECF. DCK 49. On May 19, 2024 Counsel for Defendants were explicitly made aware that Defendants were served with the Complaint on April 24, 2023. DCK 55. Yet, Defendants waited three weeks after it was notified of the April 24, 2024 service date to first approach counsel for Plaintiffs with a request for an extension to prepare a response. This case was filed on January 24, 2024 (DCK 1)

11

and Defendants have had actual notice of the lawsuit since at least March 15. 2024 when they engaged counsel to appear on their behalf. DCK 28.

Defendants and their counsel have had notice of the lawsuit and, importantly have provided no excuse or reason why an answer or request for extension to answer or otherwise respond to the Third Amended Complaint was not timely made.

### 3. THE PREJUDICE TO BULLSEYEBORE.

Bullseyebore will be prejudiced by having to re-litigate the same issues it has already briefed and presented to this court in opposition to the Defendant's argument why the court lacked jurisdiction over the website defendants, and, potentially face new issues that were not previously raised in the prior pleadings. Any new argument challenging personal jurisdiction should be considered waived.

### 4. WHETHER THERE IS A HISTORY OF DILATORY ACTION

The factor of whether there is a history of dilatory action is neutral or favors the denial of Defednants' motion. The Defendants' litigation tactics and decision to appear on behalf of the "websites" or John Doe Defendants and not the real parties in interest wasted Plaintiff's and this Court's time.

### 5. THE AVAILABILITY OF SANCTIONS LESS DRASTIC.

To the extent that the court is inclined to grant Defedannts's motion, it is submitted that the Court should find the Defednants have been served under Rule 4 and preclude further personal jurisdictional motions in view of the reasons set forth herein.

## II.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied, or alternative, the court should find that have been served and summarily reject its belated  and repeated jurisdictional defense.

July 12,  2024                                    Respectfully Submitted,

                                                  /s/ Andrew C. Aitken
                                                  Andrew C. Aitken, Esq (# 06413)
                                                  6701 Democracy Blvd., Suite 555
                                                  Bethesda, Maryland 20817
                                                  (301) 537-3299
                                                  acaitken@aitkenlawoffices.com

                                                  *Attorney for Bullseyebore, Inc.*

.