IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BULLSEYEBORE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LANDBASE TRADING CO. LTD, et al.<br><br>Defendants. | CIVIL ACTION NO. 1:24-cv-00246-RDB |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR**
**MODIFICATION OF ASSET RESTRAINT**

Defendants Adah Technology Co., Ltd., Awin E-commerce Ltd., Dongguan Hengjia E-Commerce Co., Ltd., Elay E-commerce Co., Ltd., Larryhot Trading Co., Ltd., Nanchang Huimeng Network Technology Co., Ltd., Shenzhen Jiuan Yunchen Network Technology Co., Ltd., Shenzhen Maoluhui Network Technology Co., Ltd., Shenzhen Zhongtou Guorong Trading Co., Ltd., Suzhou Chenghe Network Technology Co., Ltd., Suzhou Ruoxing Network Technology Co., Ltd., Topli Trading Co., Ltd., Wotai Network Technology Co., Ltd (collectively "Defendants"), by and through their attorneys Jacob Chen and Anthony Son, respectfully submit this memorandum of law in support of Defendants' motion to modify the existing restraining order, pursuant to this Court's order dated April 15, 2024 permitting as such.

    **I.**    **DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION**

"To enter a judgment that adjudicates the rights of a party, a federal court must have personal jurisdiction over that party." *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 228

1

(4th Cir. 2019); *Evapco, Inc. v. Mech. Prods. Sw., LLC*, No. SAG-22-3375, 2023 U.S. Dist. LEXIS 11813, at *7 (D. Md. Jan. 23, 2023) ("Given the lack of factual development at this early stage of the litigation, this Court cannot conclude that it has personal jurisdiction over Environ. And without personal jurisdiction over Environ, the Court cannot grant injunctive relief against it."); *Advanced Tactical Ordnance Sys., L.L.C. v. Real Action Paintball, Inc.*, 751 F.3d 796, 798 (7th Cir. 2014) ("Although the parties have focused in their briefs on the preliminary injunction the district court granted, we have a more fundamental problem with the case. We conclude that the district court lacked personal jurisdiction over defendant Real Action, which preserved its objection on this point."); *Tiffany (NJ) LLC v. China Merchs. Bank*, 589 F. App'x 550, 553 (2d Cir. 2014) ("While jurisdiction over a defendant is all that a court needs to issue an injunction freezing that party's assets, a district court can enforce an injunction against a nonparty only if it has personal jurisdiction over that nonparty.").

Defendants are not subject to personal jurisdiction of this Court and the reasons for such are outlined and presented in detail in Defendants' prior motion to set aside default. (ECF No. 76).

Defendants repeat and reiterate all points raised in the prior motion.

In addition, with respect to the issue of proper service, attached as Exhibit A is official guidance as issued by the Ministry of Justice of the People's Republic of China addressing the legality of service of documents in China through electronic mail. In the guidance, Chinese authorities state that "[a]ccording to China's Civil Procedure Law, a foreign judicial body or individual cannot directly serve documents to a person within China. Such requests should be submitted through the channels specified by treaties or through diplomatic channels, to the Ministry of Justice or the Ministry of Foreign Affairs, for the People's Court of China to serve on

2

their behalf. When China joined the Hague Service Convention, it reserved the right under Article 10, which prohibits serving documents by mail within its territory." Chinese authorities have therefore explicitly stated that by objecting to service via "postal channels," Chinese authorities also object to specifically service via electronic mail.

II. **THE ASSET FREEZE MUST BE LIMITED TO THE SALES REVENUE OF THE ALLEGEDLY INFRINGING PRODUCTS**

Even if there *were* personal jurisdiction over Defendants, the amount of the injunction currently in place is significantly above and beyond what is permitted by law.

In this Court's Order dated April 15, 2024, this Court ordered that: "Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order as permitted by and in compliance with the Federal Rules of Civil Procedure and the US District Court of Maryland Local Rules." (ECF No. 50, ¶8). The same language is contained in this Court's order dated February 13, 2024. (ECF No. 20, ¶8).

District courts generally do not have the authority to preliminarily restrain assets where a plaintiff seeks only a money judgment. *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 333, 119 S. Ct. 1961, 1975, 144 L.Ed.2d 319, 340 (1999).

Plaintiff is only allowed to pursue such restraint because the Lanham Act permits plaintiff "subject to the principles of equity" to recover "defendant's profits." 15 U.S.C.S. § 1117. But for that reason, the injunction must be capped at Defendants' profits. *See e.g. Awareness Ave. Jewelry LLC v. P'ship*, No. 8:23-cv-2-TPB-AAS, 2023 U.S. Dist. LEXIS 88241, at *4 (M.D. Fla. May 19, 2023) ("Because the moving Defendants have submitted evidence that their profits from the allegedly infringing activity have been minimal, the asset freeze ordered by the Court was overbroad."); *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule*

3

*A*, No. 13 C 07621, 2013 U.S. Dist. LEXIS 205985, at *5 (N.D. Ill. Oct. 30, 2013) ("where equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief."); *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 143 (2d Cir. 2023) (Where the Second Circuit upheld a district court's injunction freezing a defendant's revenue from sale of allegedly infringing products); *Gucci Am. v. Bank of China*, 768 F.3d 122, 133 (2d Cir. 2014) (Holding that a plaintiff seeking an accounting of profits is "required to prove defendant's sales").

A summary of Defendants' total sales of allegedly infringing products are annexed herein, supported by documents, records, and sworn declarations. The following is a chart of each of the Defendants total sales revenue from the allegedly infringing products as compared to the amount of funds currently frozen.

| Defendant | Total US Sales Revenue | Total Assets Frozen |
|---|---|---|
| Larryhot Trading Co., Limited | $5,066.72 | $ 976,271.56 |
| Shenzhen Maoluhui Network Technology Co., Ltd. | $0 | $177,847.41 |
| Elay E-commerce Co., Limited | $0 | $454,830.46 |
| Adah Technology Co., Limited | $0 | |
| Shenzhen Jiuan Yunchen Network Technology Co., Ltd. | $0 | $151,648.63 |
| Topli Trading Co., Limited | $109.91 | $100,498.42 |

4

| | | |
|---|---|---|
| Shenzhen Zhongtou Guorong Trading Co., Ltd. | $0 | $2,761.24 |
| Dongguan Hengjia E-Commerce Co., Ltd. | $128.52 | $418,726.56 |
| Nanchang Huimeng Network Technology Co., Ltd. | $0 | $226,374.01 |
| Awin E-commerce Limited | $0 | $361,280.39 |
| Suzhou Chenghe Network Technology Co., Ltd. | $0 | $790,461.67 |
| Suzhou Ruoxing Network Technology Co., Ltd. | $0 | $144,044.64 |
| Wotai Network Technology Co., Limited | $0 | $290,997.03 |

The current total assets ($4,095,742.02) frozen vastly exceed the total *revenue*, and thus by extension grossly exceed the total profits. Therefore, should the Court not dismiss the case for lack of personal jurisdiction and/or improper service, Defendants are entitled to a downward modification of the assets frozen to match the revenue from the sales.

### III.   PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE MERITS

"To obtain the 'extraordinary relief' of a preliminary injunction, a plaintiff must establish the four so-called *Winter* factors: (1) that he's likely to succeed on the merits; (2) that he's likely to suffer irreparable harm if preliminary relief isn't granted; (3) that the balance of equities favors him; and (4) that an injunction is in the public interest." *Frazier v. Prince George's Cty.*, 86 F.4th

537, 543 (4th Cir. 2023).

Here, multiple of these factors weigh against Plaintiffs.

A. **PLAINTIFFS ARE UNLIKELY TO SUFFER IRREPARABLE HARM**

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Therefore, a plaintiff seeking a preliminary injunction must demonstrate that "he is likely to suffer irreparable harm in the absence of preliminary relief." *Id*.

As stated in the accompanying declarations, Defendants were never served with a cease and desist or any notice of alleged infringement by Plaintiff prior to Plaintiff's commencement of this action against Defendants. Defendants were not aware of this alleged infringement until Plaintiff commenced a lawsuit and sought a temporary restraining order freezing Defendants' assets. Defendants immediately and permanently discontinued the sale of any of the allegedly infringing goods at issue in this case and will not resume said sales for the pendency of this action. Such a declaration "is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953). Defendants' declaration constitutes voluntary, public, and unequivocal intention to discontinue the alleged infringement, thereby absolving the need for injunctive relief. *See e.g., Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72, 104 S. Ct. 373, 376, 78 L.Ed.2d 58, 63 (1983).

B. **PLAINTIFFS DO NOT HAVE A HIGH LIKELIHOOD OF PREVAILING**

Injunctive relief is not warranted because Plaintiffs do not have a high likelihood of prevailing and Plaintiffs are not likely to suffer irreparable harm.

First, as mentioned, Defendants were not properly served and also are not subject to personal jurisdiction in Maryland and therefore this case should be dismissed.

But improper service and jurisdiction aside, there are serious concerns with respect to the underlying merits of Plaintiff's case which warrant scrutiny.

Plaintiff alleges that it is "currently making" its products available to consumers through its website, and that "in anticipation of the launch to consumers" Plaintiff advertised and marketed its goods online. (ECF No. 21, ¶17). But this is patently false. The reality is Plaintiff's website, www.bullseyebore.com *does not sell any goods at all*. Plaintiff is running a *kick-starter campaign* which allows people to *donate money* in exchange for *possibly* receiving items. As Kickstarter itself acknowledges being a supporter is "getting a front row seat to the creative process" and "**backing is not buying, and rewards are not guaranteed.**" *See* Kickstarter FAQ. Kickstarter in fact openly acknowledges that creators are not required to finish projects, and creators have no obligation to ever ship or deliver any products. *See* Kickstarter FAQ. Plaintiff has not sold *any* products to the general public and is not currently in the business of selling products to the general public. And Plaintiff *might never* sell any products to the general public. Plaintiff has been flirting with and talking about selling Bullseyebore since 2015 without having sold a single item. *See* Popular Mechanics.

All products sold by Defendants were all sold under the label: "AlignDrill Pro." Plaintiff in their motion for TRO presents no evidence that any of the products sold by Defendants actually contain "Bullseyebore" on the product itself or its packaging. (ECF No. 7-11). Nor has Plaintiff produced any evidence that any of the AlignDrill Pro products sold used patented technology belonging to Plaintiff. In fact, Plaintiff's motion for injunctive relief does not contain an

examination of a single item sold by any of the Defendants.

"In the Fourth Circuit, the following equitable factors are appropriate for a district court to consider when assessing a disgorgement of a defendant's profits under the Lanham Act: (1) whether the defendant had the intent to confuse or deceive, (2) whether sales were diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*, 599 F. Supp. 2d 648, 661 (M.D.N.C. 2009).

Given that Plaintiff has not yet begun selling any products, there can be no diversion of sales. Moreover, Defendants here use a different name for the products in question: "AlignDrill Pro." Defendants did not intend to confuse or deceive, and this is not a case of palming off. In fact, in most of Plaintiff's submission in support of their TRO, there are no visible signs of Plaintiff's mark at all. *See e.g.* (ECF No. 7-11, 1-2, 5-6, 8-9, etc.). A customer could easily look at Defendants' website, and placed an order for an AlignDrill Pro product, without once seeing or noticing a "Bullseyebore" trademark. As for the "public interest", given Plaintiff's long history of having never sold any products at all, Plaintiff appears to be running a lucrative scam by publishing alluring photos and videos, soliciting donations, squatted on its mark and copyright, and are now seeking to make money via litigation rather than through the actual sale and shipment of any of its products. (ECF No. 49, ¶17-19)

All of these factors weigh against disgorgement of profits.

In addition, the Copyright Act may preempt Plaintiff's Lanham Act claims. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29, 123 S. Ct. 2041, 2045, 156 L.Ed.2d

18, 28 (2003); *Logan Developers, Inc. v. Heritage Bldgs., Inc.*, No. 7:12-CV-323, 2013 U.S. Dist. LEXIS 140909, at *8 (E.D.N.C. Sep. 30, 2013). In *Logan Developers*, plaintiff Logan Developers ("Logan") designed a line of houses which defendant Heritage Building ("Heritage") then copied and sold, as well as advertised on its own website as belonging to Heritage. There, the Eastern District of North Carolina held that although Heritage copied Logan's designs, and then passed it off as their own product, Logan's Lanham Act claim was pre-empted by the Copyright Act, and therefore was subject to dismissal.

With respect to Plaintiff's Copyright claims, the Copyright Act permits a copyright owner to recover "any profits of the infringer that are attributable to the infringement." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003). The infringer then may prove "either that part or all of those revenues are 'deductible expenses' (i.e., are not profits), or that they are 'attributable to factors other than the copyrighted work.'" *Id* at 520. Here, all of Defendants' (very small) profits are the product of the fact that Defendants had a product for sale, whereas Plaintiff do not (and may never have). Had Defendants used a different set of photos or videos, there may have been no difference in sales. Defendants reiterate that the page on which the products sold identified the products as "AlignDrill Pro." Whereas Plaintiff does not sell any goods at all.

Lastly with respect to Plaintiff's patent claims, Plaintiff on their motion for injunctive relief do not include any evidence as to and concerning any of Defendants' goods. "The burden is on the party seeking injunctive relief to demonstrate its entitlement to an injunction." *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2016 U.S. Dist. LEXIS 79234, at *3 (E.D.N.C. June 17, 2016). It is well settled that patent infringement analysis is a two-step process.    *Markman*

9

*v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1983). "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Id.* (internal citation omitted). Plaintiff did not even come close the meeting its burden on patent infringement. Plaintiff did not offer any claim construction setting forth the meaning and scope of the asserted patent claims. In addition, Plaintiff presented no evidence concerning the Defendants' products compared to the properly construed claim elements. In fact, there is no evidence on the record that Plaintiff has purchased or inspected a single one of the products sold by Defendants. There is no evidence of patent infringement.

### C. THE BALANCE OF EQUITIES WEIGHS IN FAVOR OF DEFENDANTS

The continued freezing of assets sought by Plaintiff is an "extraordinary relief" which would prevent Defendants "from operating aspects of their business not implicated by this lawsuit" and therefore lead to irreparable harm to the Defendants. *Epic Tech., LLC v. Raleigh Startup Sols. LLC*, No. 5:23-CV-136-D, 2023 U.S. Dist. LEXIS 121781, at *17 (E.D.N.C. June 5, 2023). The harm to Defendants are detailed in their accompanying declarations, with the asset freeze having a detrimental impact on their ability to run their business.

For these reasons, especially in consideration of the unique situation as aforementioned, with Plaintiff being a business that has had 0 sales and has been promising to release the Bullseyebore product for *10 years*, the balance of equities here weighs in favor of the Defendants.

### IV. THE AMOUNT OF THE BOND SHOULD BE INCREASED

In connection with the TRO, this Court required Plaintiff to post a $14,000 bond.

10

The Court "has the power to modify bond requirements, and if either party wishes to present evidence that a different amount is appropriate, that party may move to modify the bond." *Indus. Xperience, LLC v. Dance Xperience*, No. 19-cv-06724, 2020 U.S. Dist. LEXIS 66929, at *9 (N.D. Ill. Apr. 16, 2020).

Pursuant to Federal Rule of Civil Procedure 65(c), a district court must fix a bond whenever it grants a preliminary injunction "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The purpose of the bond is to provide security for any damages resulting from an improvidently granted injunction. The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party." *Doe v. Pittsylvania Cty.*, 842 F. Supp. 2d 927, 937 (W.D. Va. 2012) (Internal citations omitted).

One measure of such damage is prejudgment interest on all funds that have been wrongfully held. *See Par Pharm., Inc. v. TWi Pharmaceuticals, Inc.*, No. CCB-11-2466, 2016 U.S. Dist. LEXIS 138127, at *20 (D. Md. Sep. 27, 2016) (Where this Court on defendant's motion to execute on the injunction bonds awarded damages based on prejudgment interest at statutory rate of 6% on bond); *see also Takeda Pharmaceuticals, U.S.A., Inc. v. West-Ward Pharm. Corp.*, Civil Action No. 14-1268-RGA, 2018 U.S. Dist. LEXIS 209405, at *21 (D. Del. Dec. 12, 2018) ("Prejudgment interest is regularly awarded to a party who has been wrongfully enjoined. Prejudgment interest shall be calculated from the date the TRO was granted."); *XO Energy LLC v. Zhao*, No. 4:15-CV-599, 2016 U.S. Dist. LEXIS 47456, at *4 (S.D. Tex. Apr. 8, 2016) (Where Defendant was awarded damages calculated based on what Defendant "would have earned in interest had he been free to invest the enjoined money during the time period he was restrained.");

*Venn v. St. Paul Fire & Marine Insurance Co.*, 99 F.3d 1058, 1067, 10 Fla. L. Weekly Fed. C 546 (11th Cir. 1996) ("The loss theory recognizes that 'interest is the natural fruit of money.'"); *Global Material Technologies, Inc. v. Dazheng Metal Fibre Co.*, No. 12 CV 1851, 2015 U.S. Dist. LEXIS 57778, at *14 (N.D. Ill. May 1, 2015) (Holding that lost interest on payments were damages arising out of delay in payment).

Here, Plaintiff presently seeks to restraint assets in the amount of $4,095,742.02. Maryland's statutory interest rate per annum is 10%. CJ § 11-107. Therefore, Defendants request that the bond be increased to $200,000 or 5% of the frozen funds, equivalent to statutory damages if the funds in question were wrongly restrained for a period of six (6) months.

This increase would be appropriate given the amount of assets being restrained. For example, in *E-Link Tech. Co. v. Shenzhen Uni-Sun Elecs. Co.*, No. 20 C 00247, 2020 U.S. Dist. LEXIS 122771, at *11 (N.D. Ill. May 14, 2020), the District Court agreed that "the $10,000 bond amount is likely too low to 'pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained' per Fed. R. Civ. P. 65(c)". The court required plaintiff to post a bond of $250,000. *Id*. Similarly, in *Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, 509 F. Supp. 3d 52, 80 (D.N.J. 2020), the district court froze the defendant's asset totaling 20 million, and required a bond of $1 million, "representing approximately 5% of the frozen funds." For these reasons, the sought amount increase in bond is appropriate.

## **CONCLUSION**

For these reasons, including the improper service and lack of personal jurisdiction, the total actual sales by Defendants, and the specific unique facts of this case, including that Plaintiff does not sell any products to the general public, and that Plaintiff is not in danger of any irreparable

harm because Defendants have voluntarily ceased and discontinued the sale of any allegedly infringing goods, Defendants request that the Court modify or vacate the preliminary injunction. To the extent the Court were to keep the injunction, such injunction must be very narrow and limited to address the actual harm that Plaintiff, who does not even sell any products to the general public, would suffer as a result of Defendants' discontinued sales. Lastly, a substantial increase in bond is warranted to account for the harm Defendants will suffer from any amounts wrongfully restrained.

                              Respectfully Submitted,

Dated: November 25, 2024                 /s/ *Jacob Chen*
                                                     Jacob Chen, Esq.
DGW Kramer LLP
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
Tel:   (917) 983-2806
Fax:   (917) 633-6183
jchen@dgwllp.com

Anthony Son
Bar No. 16335
*Of Counsel*
DGW Kramer LLP
1629 K St. NW Suite 300
Washington, DC 20006
Tel:   (202) 507-0125
ason@dgwllp.com

Attorneys for Defendants Adah Technology Co., Ltd., Awin E-commerce Ltd., Dongguan Hengjia E-Commerce Co., Ltd., Elay E-commerce Co., Ltd., Larryhot Trading Co., Ltd., Nanchang Huimeng Network Technology Co., Ltd., Shenzhen Jiuan Yunchen Network Technology Co., Ltd., Shenzhen Maoluhui

13

Network Technology Co., Ltd., Shenzhen Zhongtou Guorong Trading Co., Ltd., Suzhou Chenghe Network Technology Co., Ltd., Suzhou Ruoxing Network Technology Co., Ltd., Topli Trading Co., Ltd., Wotai Network Technology Co., Ltd

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 25, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's electronic case filing system. Any other counsel of record will be served by first class mail.

    /s/ Jacob Y. Chen    
Jacob Y. Chen