UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------------------------------------X
BULLSEYEBORE, INC.

                      Plaintiff,

   -against-

LANDBASE TRADING CO. LTD, et. al.

                    Defendants.
------------------------------------------------------------------------X

Civil Action No.:
1:24-cv-00246-RDB

**DECLARATION OF KANG LU**

I, Kang Lu, declares as follows:

1. My name is Kang Lu, I am the Chief Executive Officer ("CEO") of Adah Technology Co., Limited (the "Company"). The Company is responsible for the PayPal Account: adah0947@126.com, and maintains the domain name: vofatiponal.com (the "Domain Name").

2. I have worked as the CEO for the Company for 3 years, and am familiar with optimizing the management of supply chain and logistics work, coordinating third-party service providers, handling the Company's daily affairs, deciding the Company's business development direction, maintaining the Company's daily operations, and expanding the Company's business.

**NATURE OF THE COMPANY**

3. Adah Technology Co., Limited is an e-commerce company that engages in the sales of various miscellaneous products to interested buyers around the world.

4. Company was founded in August 2020. It is headquartered in Hong Kong SAR. We have no offices, employees, sales representatives, or real property in Maryland. We have no

1

registered agents in Maryland, are not registered to do business in Maryland, have no bank accounts in Maryland and have never filed any Maryland tax returns.

5. The Company sells approximately 1,000 different products.

6. The Company sells these products through vofatiponal.com.

7. The Company has an Operations Team which is in charge of determining what products or items the Company should sell. The Operations Team's job is to follow rival e-commerce websites and examine the products that are sold or that seem popular.

8. If they identify any products which look promising, they would notify our company's outsourcing service provider. The outsourcing service provider for the Company is Wuhan Gufengda Network Technology Co., Ltd.

9. The outsourcing service provider undertakes a series of service outsourcing, including product procurement, warehousing, arranging personnel for packing, shipping, etc. Therefore, our Company does not directly purchase or store products itself.

10. I believe our Operations Team first identified these products as a popular item because we saw a lot of different e-commerce companies selling them. Because they were available on multiple platforms, we did not think that it would be an issue to also sell the same products as it did not seem any one company had exclusive rights.

### SALES OF ALIGNDRILL PRO PRODUCTS

11. According to our records, the Company began selling "AlignDrill Pro" products on January 12, 2024, and has occurred no sales globally.

12. We have had 0 sales in the State of Maryland.

13. We have **never** sold any products under the name "Bullseyebore," nor were we aware of the company Bullseyebore or their products.

14. The Operations Team, who accessed the backend data system of the website, performed thorough searches using the plaintiff company's name, specific brand keywords, and broader category-related terms such as "AlignDrill Pro" "Align," and "Drill." They manually reviewed the search results against images of the allegedly infringing products, pinpointing matches by their appearance or use of similar brand keywords. Each product identified was linked to a unique website address and compiled into a list of landing pages. These addresses facilitated precise backend searches to comprehensively track all allegedly infringing orders if any.

15. According to thorough searches, the total sales of "AlignDrill Pro" products in the United States was $0, and in Maryland was $0.

16. We have checked the searches thoroughly and can confirm that the searches result is accurate.

17. Based on this, the gross profits derived from the sale of the allegedly infringing products was $-32.95.

18. To our knowledge, the goods that we listed and advertised were under the mark: "AlignDrill Pro." Prospective customers would see the products listed on the webstore under the name AlignDrill Pro which is prominently visible. The words "Bullseyebore" do not appear anywhere in the product description.

19. We have never purchased any products from Bullseyebore, and to our knowledge, it is still not possible to purchase any products because we have been informed by our attorneys

that Bullseyebore does not have any final products available for sale. Therefore we cannot compare any the AlignDrill Pro products with the Bullseyebore products to see if they are the same or different or if the quality is better or worse.

## ADVERTISING AND MARKETING

20. The Company advertises and has advertised allegedly infringing products on Facebook.

21. We were able to obtain from the Meta/Facebook Ad Manager certain detailed records for the products and advertising.

22. When advertising on Facebook, we do not target any specific states or cities. We in fact include all countries in our advertising campaign because we offer international shipping and as a result we have a fair number of global sales on our products generally.

23. We only advertise our products through the Meta Ad Manager. We do not advertise on Tik-Tok, Pintrest, X (or Twitter).

24. According to our records, the total amount of money that was spent on Facebook Ad-Managers for advertising for the AlignDrill products was $32.95.

## NO CONTINUED HARM TO PLAINTIFF

25. Since we first discovered the lawsuit, when this Court issued the initial temporary restraining order, we have permanently discontinued the sale of all AlignDrill Pro products on our website.

26. We have had no sales since that took place.

27. We have permanently removed all AlignDrill Pro products and advertising from our domain name. We no longer have any advertisements of AlignDrill Pro products.

28. At the present moment, we have 0 remaining units of the allegedly infringing products contained in a warehouse. The warehouse is owned by the Wuhan Gufengda Network Technology Co., Ltd.

29. There is no ongoing harm to Plaintiffs. We have voluntarily but permanently discontinued all sales of "AlignDrill Pro products" products and will not resume sales irrespective of the outcome of this case.

## RETAINING COUNSEL FOR REPRESENTATION

30. Our firm hired DGW Kramer LLP to represent us in this matter. This is a law firm that has a good reputation, is known to us, has staff that understands, speaks, and reads Mandarin/Chinese, and is familiar with our company and our practices.

31. They have previously represented us in this and other cases. We have never operated in Maryland and are unfamiliar with the attorneys there and have no relationship with any attorneys in Maryland.

32. After the Court indicated that only attorneys who are licensed to practice in the Maryland Federal Court may represent them, it is our understanding that our counsel proceeded to obtain admission to the Maryland Federal Court. Now that they have become admitted, we are now once again represented by attorneys who can now speak on our behalf.

## MISCELLANEOUS

33. This declaration was translated to me into Mandarin.

34. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   September 20, 2024

By: _____/s/ Kang Lu_____
       Kang Lu