UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------------------------------------X
BULLSEYEBORE, INC.

                      Plaintiff,

    -against-

LANDBASE TRADING CO. LTD, et. al.

                      Defendants.
------------------------------------------------------------------------X

Civil Action No.:
1:24-cv-00246-RDB

**DECLARATION OF QIULI XIE**

I, QiuLi Xie, declares as follows:

1. My name is QiuLi Xie, I am the Chief Executive Officer ("CEO") of Topli Trading Co., Limited (the "Company"). The Company is responsible for the PayPal Account: Toplitd@outlook.com, and maintains the domain name: slightliy.com (the "Domain Name").

2. I have worked as the CEO for the Company for 1 year, and am familiar with identifying market opportunities and risks, making correct decisions, promoting orderly company development, adapting to market changes, expanding business, seeking and evaluating new business cooperation opportunities, and expanding the market.

**NATURE OF THE COMPANY**

3. Topli Trading Co., Limited is an e-commerce company that engages in the sales of various miscellaneous products to interested buyers around the world.

4. Company was founded in October 2022. It is headquartered in Hong Kong SAR. We have no offices, employees, sales representatives, or real property in Maryland. We have no registered agents in Maryland, are not registered to do business in Maryland, have no bank

1

accounts in Maryland and have never filed any Maryland tax returns.

5. The Company sells approximately 1,000 different products.

6. The Company sells these products through slightliy.com.

7. The Company has an Operations Team which is in charge of determining what products or items the Company should sell. The Operations Team's job is to follow rival e-commerce websites and examine the products that are sold or that seem popular.

8. If they identify any products which look promising, they would notify our company's outsourcing service provider. The outsourcing service provider for the Company is Wuhan Gufengda Network Technology Co., Ltd.

9. The outsourcing service provider undertakes a series of service outsourcing, including product procurement, warehousing, arranging personnel for packing, shipping, etc. Therefore, our Company does not directly purchase or store products itself.

10. I believe our Operations Team first identified these products as a popular item because we saw a lot of different e-commerce companies selling them. Because they were available on multiple platforms, we did not think that it would be an issue to also sell the same products as it did not seem any one company had exclusive rights.

**SALES OF ALIGNDRILL PRO PRODUCTS**

11. According to our records, the Company began selling "AlignDrill Pro" products on January 12, 2024, with the earliest sales occurring on January 12, 2024 and the latest sale on January 14, 2024.

12. We have had 0 sales in the State of Maryland.

13. Attached as Exhibit A to this declaration are the full and complete sales records we have of each and every sale of all products that bore the description or the term "AlignDrill Pro."

14. We have **never** sold any products under the name "Bullseyebore," nor were we aware of the company Bullseyebore or their products.

15. These records were generated by the Operations Team, who accessed the backend data system of the website. The team performed thorough searches using the plaintiff company's name, specific brand keywords, and broader category-related terms such as "AlignDrill Pro" "Align," and "Drill." They manually reviewed the search results against images of the allegedly infringing products, pinpointing matches by their appearance or use of similar brand keywords. Each product identified was linked to a unique website address and compiled into a list of landing pages. These addresses facilitated precise backend searches to comprehensively track all allegedly infringing orders and systematically compile them into a spreadsheet.

16. These records are full and complete, and they identify each and every order placed, the date the order was placed, the total revenue generated, and where the orders were delivered. We have modified the records only to omit the personal home address and the names of the buyers to preserve the privacy of the individual customers who are not parties to this lawsuit.

17. According to these records, as a summary, the total sales of "AlignDrill Pro" products in the United States was $109.91, and in Maryland was $0.

18. We have checked these numbers thoroughly and can confirm that they constitute all the orders which were made.

19. For each of these sales, the costs of the goods sold, as charged to us by the Wuhan Gufengda Network Technology Co., Ltd. amounted to $68.75. This total includes a product

purchase cost of $38.3, logistics cost of $18.7, and a packaging fee of $11.75.

20. Based on this, the gross profits derived from the sale of the allegedly infringing products was $-150.37.

21. To our knowledge, the goods that we sold and advertised were sold under the mark: "AlignDrill Pro." Prospective customers would see the products being sold under the name AlignDrill Pro which is prominently visible. The words "Bullseyebore" do not appear anywhere in the product description.

22. We have never purchased any products from Bullseyebore, and to our knowledge, it is still not possible to purchase any products because we have been informed by our attorneys that Bullseyebore does not have any final products available for sale. Therefore we cannot compare any the AlignDrill Pro products with the Bullseyebore products to see if they are the same or different or if the quality is better or worse.

## ADVERTISING AND MARKETING

23. The Company advertises and has advertised allegedly infringing products on Facebook.

24. We were able to obtain from the Meta/Facebook Ad Manager certain detailed records for the products and advertising.

25. When advertising on Facebook, we do not target any specific states or cities. We in fact include all countries in our advertising campaign because we offer international shipping and as a result we have a fair number of global sales on our products generally.

26. We only advertise our products through the Meta Ad Manager. We do not advertise on Tik-Tok, Pintrest, X (or Twitter).

27. According to our records, the total amount of money that was spent on Facebook Ad-Managers for advertising for the AlignDril products was $307.41. This amount should be further deducted from the revenues generated as a cost associated with generating the revenue.

## NO CONTINUED HARM TO PLAINTIFF

28. Since we first discovered the lawsuit, when this Court issued the initial temporary restraining order, we have permanently discontinued the sale of all AlignDrill Pro products on our website.

29. We have had no sales since that took place.

30. We have permanently removed all AlignDrill Pro products and advertising from our domain names. We no longer have any advertisements of AlignDrill Pro products.

31. At the present moment, we have no remaining units of the allegedly infringing products contained in a warehouse. The warehouse is owned by the Wuhan Gufengda Network Technology Co., Ltd.

32. There is no ongoing harm to Plaintiffs. We have voluntarily but permanently discontinued all sales of "AlignDrill Pro products" products and will not resume sales irrespective of the outcome of this case.

## HARM TO THE COMPANY FROM ASSET RESTRAINT

33. When a TRO was first issued in this case, all of the money in our Company's PayPal account was frozen. This resulted in a total asset freeze of $100,498.42.

34. As a company that sells thousands of products, the sales from AlignDrill Pro products represents only a tiny fraction of our overall sales.

35. The asset restraint has had a major serious impact on our company's finances.

Various expenses cannot be paid, including employee salaries, office rent, and third-party service provider bills. As a result, the Company's reputation has also been greatly affected, which represents another significant loss for the Company's future operations.

36. Because of this asset restraint, we have not been able to use those funds to acquire and offer additional products for sale, or invest in Facebook advertising campaigns for our other products, or to use those funds in any other aspects of our business. These are just a few of the many ways that the money in the account could have been used by the Company.

37. The harm that our company has incurred has been significant.

38. One simple way to measure the harm is that the money as frozen in PayPal does not collect any interest. From the time of the initial freeze January 2024 to present, the money would have accrued 8 months of interest which at 9% would have come out to $6,029.9.

39. For these reasons, we ask that the Court, to the extent that it issues any injunction at all, takes into account the documents and numbers produced, issues a properly tailored injunction, and also award to our Company a portion of the bond for damages sustained because of Plaintiffs' overreaching.

**RETAINING COUNSEL FOR REPRESENTATION**

40. Our firm hired DGW Kramer LLP to represent us in this matter. This is a law firm that has a good reputation, is known to us, has staff that understands, speaks, and reads Mandarin/Chinese, and is familiar with our company and our practices.

41. They have previously represented us in this and other cases. We have never operated in Maryland and are unfamiliar with the attorneys there and have no relationship with any attorneys in Maryland.

42. After the Court indicated that only attorneys who are licensed to practice in the Maryland Federal Court may represent them, it is our understanding that our counsel proceeded to obtain admission to the Maryland Federal Court. Now that they have become admitted, we are now once again represented by attorneys who can now speak on our behalf.

## MISCELLANEOUS

43. This declaration was translated to me into Mandarin.

44. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   September 20, 2024

By: *QiuLi Xie*
QiuLi Xie